NOT FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

KAREEMA THOMPSON,              )
                              )
        Appellant,            )
                              )    D. C. Crim. App. Nos.[1]
            v.                )    2005-100
                              )    2005-101
                              )
PEOPLE OF THE VIRGIN ISLANDS, )    Super. Ct. Crim. No. F434/2002
                              )
        Appellee.             )
_____)

On Appeal from the Superior Court of the Virgin Islands, the
Honorable Ive Arlington Swan presiding.

Considered: February 20, 2009
Filed: November 1, 2013

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of
the Virgin Islands; and **RAYMOND FINCH**, Judge of the District
Court of the Virgin Islands.[2]

ATTORNEYS:

Treston Moore, Esq.
St. Thomas, VI
        *For the Appellant, Kareema Thompson,*

Maureen Phelan, Esq.
St. Thomas, VI
        *For the Appellee, People of the Virgin Islands.*

_____

[1] Thompson filed two notices of appeal. The first is dated April 19, 2005,
(D.C. Crim. App. No. 2005-101) appealing the Superior Court's April 6, 2005,
Order setting the matter for retrial on May 16, 2005, and denying counsel's
motion to withdraw. The second is dated July 6, 2005, (D.C. Crim. App. No.
2005-100) appealing the Superior Court's June 24, 2005, Judgment and
Commitment. The appeals are consolidated in this opinion.
[2] While Judge Julio A. Brady of the Superior Court of the Virgin Islands,
Division of St. Croix, sat on the panel that considered this matter, he
retired before the decision was issued.

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 2



MEMORANDUM OPINION

PER CURIAM,

Following a jury trial in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John ("Superior Court") from May 16, 2005, to May 19, 2005, Appellant Kareema Thompson ("Thompson") was convicted of one count of second degree murder, one count of third degree assault, and one count of unauthorized possession of a firearm. Thompson filed a timely notice of appeal from her conviction and seeks judgment of acquittal, or alternatively, a new trial.

I.   **FACTUAL AND PROCEDURAL HISTORY**

On November 3, 2001, Alphonse Blyden ("Blyden"), a minor, was shot and killed. On February 5, 2002, the Government of the Virgin Islands ("Government") filed Criminal Case No. F39/2002, *Government of the Virgin Islands v. Kareema Thompson* (the "first case"). The Government charged Thompson with two counts of involuntary manslaughter and one count of possession of an unlicensed firearm. The parties engaged in plea negotiations. On August 1, 2002, Thompson informed the Government that she rejected the plea offer.

In October, 2002, a different Assistant Attorney General ("AAG") assumed prosecution of the first case. On October 11,

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 3

2002, the new AAG filed a Notice of Appearance and a "Motion for

Leave to File Superseding Information, or in the Alternative, to

Dismiss Second Amended Information without Prejudice, Pending

Filing of New Information," accompanied by a memorandum of law

and a superseding information. The trial judge informed the

Government that the court could not allow a superseding

information to be filed in the same case while the original or

amended information was still pending. Being so informed, the

Government moved the court to dismiss the first case. The court

dismissed the first case without prejudice on December 30, 2002.

On the same day, the Government filed an Information bearing

Criminal Case No. F434/2002 (the "second case"), which charged

the same offenses as those charged in the first case.

On January 14, 2003, Thompson filed her Motion to Dismiss

asserting vindictive prosecution because of the Government's

filing of the second case charging different crimes with

enhanced penalties from those crimes filed in the first case.

The trial judge denied Thompson's Motion to Dismiss in a March

5, 2004 Memorandum Opinion.

On July 16, 2004, the Government filed an Amended

Information that charged Thompson with the following four

counts: Count I, second degree murder; Count II, third degree

assault; Count III, possession of an unlicensed firearm during

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 4

the commission of a crime of violence, to wit: second degree
murder; and Count IV , misprision of a felony, to wit: murder.
The Government filed a Second Amended Information on September
9, 2004. On March 7, 2005, the government filed a Third Amended
Information that dropped Count IV, misprision of a felony, to
wit: murder. Subsequently, on March 16, 2005, the government
filed a Fourth Amended Information.

Thompson's jury trial began on March 15, 2005. After two
days of deliberation, the jury informed the Court via note that
the jurors were unable to reach a unanimous verdict with respect
to any of the counts. Both the Government and Thompson requested
that the Court declare a mistrial. The Court conducted *voire
dire* in the courtroom. Each juror affirmed that the jury was
deadlocked. The Court dismissed the jurors and declared a
mistrial.

On April 6, 2005, the court issued an Order that (1)
scheduled a final pre-trial conference; (2) scheduled jury
selection; (3) scheduled the trial date; (4) denied Thompson's
counsel's Motion to Withdraw; (5) denied Thompson's Motion to
Extend Time to File Motions; (6) denied Thompson's Renewed
Motion for Judgment of Acquittal with Points and Authorities;
(7) denied the Government's Motion to Set Jury Selection Date

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 5

Followed Immediately by Jury Trial; and (8) granted the
Government's Motion for Six Alternate Jurors.

Thompson's re-trial began on May 16, 2005. The jury heard
from several witnesses, including Khaliya Crooke ("Crooke"), a
minor, who testified that she was talking on the telephone to
Blyden immediately prior to, and during, his death. Crooke's
testimony included an "ear witness" account of what she heard
while on the telephone with Blyden. The jury began deliberating
on May 19, 2005. On the same day, the jury returned a guilty
verdict on the following counts: Count I, second degree murder;
Count II, third degree assault; and the lesser included offense
of Count III, unlawful possession of a firearm. The court
sentenced Thompson to twenty-five years on Count I and five
years on Count III. The Court merged Count II into Count I, and
no sentence was imposed for count II. The Court ordered
Thompson's sentences to run concurrently and assessed her $75 in
court costs. Thompson timely appealed.

Thompson alleges that the Superior Court erred in the
following ways: (1) denying Thompson's motion for judgment of
acquittal at the close of the Government's case in chief; (2)
allowing an inconsistent jury verdict regarding the "possession
of a firearm" count; (3) admitting hearsay evidence (statements
of the deceased) in violation of Thompson's constitutional

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 6

rights to confrontation and cross-examination; (4) allowing the Government to violate Thompson's constitutional rights by increasing the severity of charges after Thompson's refusal to accept the offered plea resulting in vindictive prosecution; (5) denying trial counsel's motion to withdraw at the conclusion of the first trial; (6) denying trial counsel's motion to continue the second trial; and (7) failing to declare a mistrial as a result of prosecutorial misconduct.

## II.  **JURISDICTION**

The Revised Organic Act gives this Court "appellate jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law." 48 U.S.C. § 1613 (a); *see also* V.I. CODE ANN. tit. 4, § 33 40 (2002); Revised Organic Act of 1954 §23A. This Court has jurisdiction to consider final orders or judgments entered by the Superior Court in all criminal cases in which the defendant has been convicted, other than a plea of guilty. This Court has jurisdiction to consider final judgments and orders of the Superior Court in criminal cases. Revised Organic Act § 23A, 48 U.S.C. § 1613a; Act 6687 § 4 (2004); Act 6730 § 5(2005)(amending Act 6687); V.I. Code Ann. tit. 4, § 33 (2006).

Thompson v. People of the V. I.
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 7

## III. <u>STANDARD OF REVIEW</u>

The Superior Court's evidentiary decisions are reviewed for

abuse of discretion. *Gov't of the V. I. v. Pinney*, 967 F.2d 912,

914 (3d Cir. 1992). We review motions for judgment of acquittal

*de novo*. *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir.

1992).[2] Conclusions of law are also reviewed de novo. *Id.*

Findings of fact are reviewed for clear error. *Huggins v. Gov't*

*of the V. I.*, 2005 U. S. Dist. LEXIS 34501, at *6 (D.V.I. App.

Div. Dec. 9, 2005). Sufficiency of evidence claims are subject

to plenary review. *See Newton v. Gov't of the V. I.*, 2005 WL

4850303, at *3 (D.V.I. App. Div. Sept. 19, 2005).

## IV. ISSUES PRESENTED

In this appeal, the Court is called upon to determine

whether: 1) the court erred in denying Thompson's motion for

judgment of acquittal; 2) inconsistent jury verdicts amounted to

reversible error; 3) the trial court erred when admitting

evidence challenged under *Crawford*; 4) Thompson was subject to

vindictive prosecution; 5) trial court erred in denying

Thompson's motion to continue and finally, whether the

---

[2] Our standard is the same as that which the trial court applied. *Id.* We must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts and drew rational inferences. *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992). The verdict of a jury "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Id.*

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 8

prosecutor's statements raised sufficient error to warrant

Thompson a new trial.

## V.   <u>ANALYSIS AND DISCUSSION</u>

### A. The Motion for Judgment of Acquittal

Thompson premises her argument on two bases. First, she

contends that she is entitled to a judgment of acquittal, or

alternatively, a new trial because Crooke's testimony concerning

the use of the term "tool" was erroneously admitted at trial.[3]

Specifically, Thompson argues that a lack of foundation for

Crooke's "ear-witness" testimony led to the erroneous admission

of evidence regarding the definition of the term "tool" as a

colloquial slang. Second, Thompson argues that the entire

testimony of Blyden's mother, Ms. Jarvis, allowed over

objection, was elicited to gain jury sympathy.

"Sufficiency-of-the-evidence review involves assessment by

the courts of whether the evidence adduced at trial could

support any rational determination of guilt[] beyond a

reasonable doubt." *United States v. Powell*, 469 U. S. 57, 67,

105 S. Ct. 471, 478 (1984). Sufficient evidence "is that quantum

of evidence that is adequate and sufficient to permit reasonable

persons to find the appellant guilty beyond a reasonable doubt."

---

[3] According to Thompson, if this evidence had not been admitted, the remaining evidence was legally insufficient to sustain a guilty verdict on the count of second degree murder.

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 9

*Sanchez v. Gov't of the V.I.*, 34 V.I. 105, 107, 921 F.Supp. 297, 299 (D.V.I. 1996). Thus, "a finding of guilt for murder is sustainable so long as the jury had before it sufficient evidence from which it could reasonably infer a nexus between the defendants' actions and the victim's subsequent death." *Newton v. Gov't of the V.I.*, 2005 WL 4850303 (D.V.I. 2005) (internal citation omitted).[4]

At trial, Crooke testified that while on the telephone with Blyden she overheard Blyden say, "Kareema stop, Kareema stop, you all stop it." Crooke further testified that Blyden told her that "Kareema playing around me with a tool." According to Thompson, Crooke's testimony was improperly allowed because it lacked foundation.

Thompson argues that Crooke "did not know what tool meant at the time she spoke with [Blyden], but was allowed to source this unfounded conclusion to a conversation she had with her unidentified and unqualified brother who allegedly provided her with that information days after the event." (Appellant's Br. at 15.)

---

[4] Additionally, to receive a new trial as the result of an erroneous evidentiary ruling, Thompson must show: (1) that the ruling was erroneous; (2) that an objection to the ruling was timely interposed on the record; and (3) that the erroneous admission or exclusion of evidence probably had substantial influence in bringing about the verdict or finding. *See* V.I. CODE ANN. tit. 5, § 774.

Thompson v. People of the V. I.
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 10

This argument is unpersuasive because at the time of
Crooke's testimony, the jury was fully aware that Crooke did not
know what "tool" meant at the time of her telephone conversation
with Blyden. Moreover, the jury was fully aware that when Crooke
provided a second statement to the Virgin Islands Police
Department ("VIPD"), she believed that "tool" meant "gun" based
on a conversation with her brother. Contrary to Thompson's
assertion that Crooke's testimony lacked foundation, the record
is clear that (1) Crooke and Blyden had a telephone
conversation; (2) Crooke's undisputed testimony was that Blyden
told her that "Kareema playing around me with a tool;"  (3) at
the time of  Crooke's initial statement to VIPD, she did not
know that "tool" meant "gun."

Moreover, Thompson was not prejudiced. At trial, she had
the opportunity to cross-examine Crooke about her knowledge of
the term "tool," when she learned what "tool" meant, and/or how
she learned what "tool" meant. Thompson also had the opportunity
to offer evidence that Crooke's definition of "tool" and "gun"
was either incorrect or not the only reasonable definition of
"tool."  As such, we find Thompson's challenge to Crooke's
"tool" testimony unconvincing.

Thompson also argues that Crooke's statement to her mother
that, "[Thompson] killed [Blyden]," is improper opinion

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 11

testimony on the ultimate issue. However, Crooke's statement to

her mother *was not* expert testimony; it was an expression of her

opinion. It is important to note that even if Crooke's statement

to her mother was considered testimony, it would be permissible

under the Federal Rules of Evidence, as non-expert opinion

testimony on the ultimate issue. *See* Fed. R. Evid. 701 and

704(a)(testimony in form of an opinion or inference otherwise

admissible is not objectionable because it embraces an ultimate

issue to be decided by the trier of fact).

As noted above, Crooke's testimony neither lacked

foundation nor was Crooke's statement to her mother improper

opinion testimony. On this record, the Superior Court's decision

to admit Crooke's testimony over Thompson's objection was not an

abuse of discretion. Accordingly, we affirm the Superior Court's

decision to allow Crooke's testimony.

Thompson's argument that the Court erroneously admitted Ms.

Jarvis' testimony is similarly unpersuasive. Even if Ms. Jarvis'

testimony engendered sympathy from the jury, it was permissibly

used to clarify the relationships of both Ms. Jarvis and Blyden

with Thompson.[5] The testimony also provided a timeline of the

---

[5] Direct Examination of Ms. Jarvis by Assistant Attorney General Gumbs Carty:

Q: Do you know Kareema - how long have you known her?

A: 'Bout four to five years.

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 12

events of November 3, 2001, from Ms. Jarvis' perspective.[6] As

such, the probative value of the challenged testimony outweighed

---

Q: And what type of relationship did you have with her?

A: She was my friend. We were cool. You know, we were friends.

Q: Do you know what type of relationship she had with [Blyden]?

A: Well, they was okay, they was, like, big sister kind of type. They was okay.

Q. Do you know how long she knew your son?

A: Not more than, say, six months to a year.

Q: So she didn't know him from birth?

A: No, 'cause I didn't know her from 'round then. No.

(J.A., vol. II, 626-627).

[6] Direct Examination of Ms. Jarvis by Attorney Gumbs Carty:

Q: Let me draw your attention to the date of November 3, 2001, do you recall that date?

A: Yes.

Q: Did anything unusual occur on that date?

A: Yes.

Q: What happened?

A: I went to work that morning, I was three months pregnant at the time. I didn't feel well that day so I ask my supervisor if I could go home . . . I came home, [Blyden] wasn't in the house he was upstairs by his friend his sister told me . . . I went inside and lay down . . . I hear the horn blowing outside. He come inside he say, "Mammy, Mammy I could go with Leroy to the mall?" I say, "Yes, [Blyden] you could go, but come back . . . He went, I fell asleep.

Eight fifty two p.m., my daughter… she was waking me up. When I got up she tell me Kareema is on the phone she want to speak to me on the phone. She say "[Ms. Jarvis], [Blyden] get shoot." So I say "Stop joking girl." She say "I ain't joking. Somebody knock on the door and he answer the door and the person shoot him." She tell me she done call the ambulance, she done call the police, and when the ambulance come she is going to ride in the ambulance with him. So I must meet her to the hospital. So I told her okay… We went to

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 13

its potentially prejudicial effect of arousing jury sympathy.
Accordingly, we also affirm the Superior Court's decision to
allow Ms. Jarvis' testimony.

### B. Inconsistent Verdicts

Thompson argues that inconsistency in the jury's verdict
requires an acquittal on the second degree murder charge
claiming that, "the jury's determination that [Thompson] was not
in possession of a firearm during the murder of [Blyden] results
in the finding that the firearm used in his death was possessed
by someone else at that time." (Appellant's Br. at 17.)   The
gravamen of Thompson's argument here, is that the jury verdict
acquitting Thompson of possession of a firearm, by inference,
means that "the victim was shot by another" and that Thompson
merely "'aided and abetted' the shooter." (*Id.* at 19.) Thompson
relies on *United States v. Powell,* 469 U.S. 57, 195 S.Ct. 471
(1984), specifically footnote 8,[7] to support her position.

---

the emergency room, we waited awhile. An Ambulance came but it was in
darkness, so when I went up to it I notice that nobody ain't in it . . . .

Hours after, good long time after her mother come now, so I get up and I run
to her and I ask her… "Way [Blyden], way Kareema? Wha going on?" So she turn
to me, she say, "You don't know?" So I say, "No. No. Know wha? Nobody ain't
tell you nothing?" I say "No." She say, "Girl, he done dead. He done dead." I
say "Wha?" I collapse in my aunt arm, they put me in a car to sit down.

(J. A., vol. II, 623-625).

[7] The footnote states, "Nothing in this opinion is intended to decide the
proper resolution of a situation where a defendant is convicted of two
crimes, where a guilty verdict on one count logically excludes a finding of
guilt on the other." 469 U.S. at 69, 105 S. Ct. at 479 (1984).

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 14

This Court finds Thompson's reliance on *Powell's* footnote 8 misplaced. *Powell,* espoused that where an inconsistent verdict is reached, "it is possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Powell,* 469 U.S. at 65, 105 S. Ct. at 476 (1984).

Here, as in *Powell*, "there is no reason to vacate [Thompson's] conviction merely because the verdicts cannot rationally be reconciled. [Thompson] is given the benefit of her acquittal on the count[ ] on which she was acquitted and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." *Id.* at 69. Accordingly, Thompson was not entitled to an acquittal on the second degree murder charge, nor was a new trial warranted due to an inconsistent verdict.

**C. The Hearsay Statements**

The parties agree that Alphonso Blyden II ("Bigga") was unavailable to testify at trial. In Thompson's view, the trial court's decision to allow Blyden's statements, overheard by and spoken to Crooke, violated her right to confrontation secured by the Sixth Amendment to the Constitution. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 15

prosecutions, the accused shall enjoy the right . . . to be
confronted with the witnesses against him." U.S. CONST. amend.
VI.[8]

"In *Crawford v. Washington*, the Supreme Court interpreted
the Confrontation Clause of the Sixth Amendment as barring the
admission of testimonial statements of a witness who did not
appear at trial unless he was available to testify, and the
defendant had a prior opportunity for cross-examination." *United
States v. Cannon*, 220 Fed. Appx. 104, 109 (3d Cir. 2007)
(internal citation omitted). "[T]his outcome obtains regardless
of whether the statement at issue falls within a firmly rooted
hearsay exception or has a particularized guarantee of
trustworthiness." *United States v. Hendricks*, 395 F.3d 173, 178-
79 (3d Cir. 2005) (citation omitted). "In sum, insofar as
'testimonial' evidence is concerned, *Crawford* replaced the
malleable judicial inquiry . . . with a virtually *per se* rule of
exclusion." *Id.* at 179 (citing *United States v. Saget*, 377 F.3d
223, 226-27 (2d Cir. 2004) ("It is clear that a court faced with
an out-of-court testimonial statement need not perform the
*Roberts* reliability analysis, as *Crawford* replaces that analysis

---

[8] The Confrontation Clause of the Sixth Amendment applies to the Virgin
Islands through Section 3 of the Revised Organic Act, 48 U.S.C. § 1561.

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 16

with a bright-line rule drawn from the historical origins of the

Confrontation Clause.")).

*Crawford* did not provide a comprehensive definition of the

word "testimonial." *See Crawford*, 125 S.Ct. at 1374. Instead,

the *Crawford* Court referenced three illustrative categories of

testimonial statements:

> (1) *ex parte* in-court testimony or its
> functional equivalent - that is, material
> such as affidavits, custodial examinations,
> prior testimony that the defendant was unable
> to cross-examine, or similar pretrial
> statements that declarants would reasonably
> expect to be used prosecutorially; (2)
> extrajudicial statements ... contained in
> formalized testimonial materials, such as
> affidavits, depositions, prior testimony, or
> confessions," and that were made under
> circumstances which would lead an objective
> witness reasonably to believe that the statement
> would be available for use at a later trial;
> and (3) statements that were made under
> circumstances which would lead an objective
> witness reasonably to believe that the statement
> would be available for use at a later trial.

*United States v. Hinton,* 423 F.3d 355, 359 (3d Cir. 2005)

(internal citations omitted). Statements describing how past

events began and progressed in hindsight are akin to live, in-

court statements made by a witness on direct examination. *Davis*

*v. Washington*, 547 U.S. 813, 830 (2006) (statements made "some

time after events described were over" and "under official

interrogation" "are an obvious substitute for live testimony,

*Thompson* v. *People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 17

because they do precisely *what a witness does* on direct

examination" (emphasis in original)). In contrast, non-

testimonial statements describe events that are presently

unfolding. *Id.* at 828 (a person is "not acting as a *witness*" and

"not *testifying*" when, for example, she speaks in response to an

interrogation with the "primary purpose [ ] to enable police

assistance to meet an ongoing emergency" (emphasis in

original)). Importantly, a statement is testimonial if it is

made under circumstances where there is a certain formality,

particularly where statements are made during the course of

police investigation. *Crawford*, 124 S.Ct. at 1364 (a witness

"who makes a formal statement to government officers bears

testimony in a sense that a person who makes a casual remark to

an acquaintance does not"); *see also United States v. Hendricks*,

395 F.3d 173, 181 (2005) (*citing Crawford*, 124 S.Ct. at 1364)

(wiretap recordings are not testimonial for Crawford purposes

where "the speakers certainly did not make the statements

thinking that "'they would be available for use at a later

trial'"")).

     We do not agree with Thompson that Blyden's statement to

Thompson overheard by Crooke, "Kareema stop, Kareema stop, you

all stop it," and Blyden's statement to Crooke that, "Kareema

playing around me with a tool," were testimonial. The statements

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 18

do not fall within any of the three categories of testimonial
statements enunciated by the *Crawford* Court. As enunciated in
*Crawford*, a witness "who makes a formal statement to government
officers bears testimony in a sense that a person who makes a []
remark to an acquaintance does not." *Crawford* 124 S.Ct. at 1364.
Blyden's private statements made on the telephone to Crooke
immediately before he was shot are in no way the functional
equivalent of in-court testimony, statements contained in
formalized testimonial materials, or statements made to be used
at a later trial. *See Hendricks*, 395 F.3d at 181 (citing *Horton
v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004) (statements made
during a private conversation are not testimonial for *Crawford*
and Confrontation Clause purposes).

   We agree with the trial court that Crooke and Blyden were
engaged in a private telephone conversation. At the time of
their conversation, there was no reasonable expectation by
either Crooke or Blyden that anything they said could, or would,
later be used against Thompson in a criminal case. As such, we
find that Blyden's statements are non-testimonial within the
meaning of *Crawford* and do not activate the protections of the
Confrontation Clause.

   In agreeing with the trial court's decision that Blyden's
statements were non-testimonial, we also find that the

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 19

statements were properly admitted into evidence pursuant to the

hearsay rules and exceptions of the Federal Rules of Evidence,

particularly Fed. R. Evid. 803(1), present sense impression[9] and

Fed. R. Evid. 803(2), excited utterance.[10] We further note that

the excited utterance hearsay exception is codified in V. I. Code

Ann. tit. 5, § 932.  That section requires the satisfaction of

four elements to meet the standard of an excited utterance:

> (1) a startling occasion,
> (2) a statement relating to the circumstances of the
> startling occasion,
> (3) a declarant who appears to have had opportunity to
> observe personally the events, and
> (4) a statement made before there has been time to reflect
> and fabricate.

*United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998).

The trial court determined, and we agree, that Blyden's

statement, "Kareema playing around me with a tool," was

admissible as a present sense impression because Blyden

personally perceived the event that his statement appears to

explain; furthermore, the statement made to Crooke while talking

on the telephone was contemporaneous with the occurrence of the

event. *See e.g., United States v. Brown*, 254 F.3d 454, 458 (3d.

---

[9] "**Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1) (emphasis in original).

[10] "**Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2) (emphasis in original).

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 20

Cir. 2001) (holding that officer's statement over the radio to the other officers that "he had been told there was a guy walking up the street with a gun" was admissible as a present sense impression under Fed. R. Evid. 803(1)).

The trial court also properly admitted Blyden's statement, "Kareema, stop, Kareema, stop, you all stop it," as an excited utterance. The trial court reasonably interpreted Blyden's statement as a response to a startling event which he personally perceived: Thompson pointing or playing around with a gun in Blyden's presence. Moreover, Blyden's statement was made as the event was occurring, without time to reflect or fabricate. Accordingly, we find no error and affirm the trial court's admission of Blyden's statements.[11]

## D. Vindictive Prosecution

Thompson argues on appeal, as she did below, that the enhancement of her charges after refusing the plea constitutes vindictive prosecution.[12] After conducting a thorough examination

---

[11] In seeking to admit Blyden's statements, the Government initially argued that the statements were also admissible as dying declarations. The trial court disagreed, reasoning that the Government did not proffer that Blyden was mortally wounded or laboring under an impression of impending death at the time the statements were made as required by Fed. R. Evid. 804(b)(2). We agree.

[12] Thompson also argues that "the charges [in criminal case F434/2002] should have been dismissed . . . pursuant to the Fifth and Sixth Amendments to the Constitution . . . and Section Three of the Revised Organic Act of 1954." (Appellant's Br. at 26.)

Thompson v. People of the V. I.
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 21

of Thompson's allegation, the trial court determined that

Thompson,

> failed to demonstrate a direct nexus or
> linkage between the filing of more severe
> charges and ill will, vindictiveness or
> animus by the prosecutor, resulting in a
> violation of [Thompson's] Constitutional
> Rights. The Court holds that it is not
> unlawful for the prosecution to file
> enhanced or additional charges against a
> Defendant, following failed efforts of plea
> negotiation, as long as the enhanced or
> additional charges were not motivated by
> ill-will, spite, animus, vindictiveness, or
> in retaliation for Defendant's rejection of
> a plea offer occasioned by the exercise of
> a cognizable Constitutional right.

(Memorandum Opinion dated March 5, 2004, at 8-9.) We do not find

the trial court's findings to be clearly erroneous. Accordingly,

we see no reason to disturb them.

**E. Denial of Thompson's Counsel's Motion to Withdraw**

Thompson argues that the trial court erred in denying her

counsel's Motion to Withdraw. Thompson further avers that she

should have been given the benefit of new counsel. In her Motion

to Withdraw, Thompson's counsel stated that Thompson failed to

adhere to the financial obligations set forth in the retainer

agreement with Moore Dodson & Russell, P.C. (the "Firm"),

creating a financial hardship on the Firm.

Thompson raises no ineffective assistance of counsel claim,

nor does she allege any reversible error that we may address on

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 22

direct appeal. Standing alone, the fact that Thompson's counsel

was not allowed to withdraw from her representation does not

equate to prejudice to Thompson, nor a deprivation of her

rights. As such, we find the trial court did not err in denying

Thompson's counsel's Motion to Withdraw.

**F.   Denial of Thompson's Motion to Continue the Second
       Trial**

Thompson argues that the trial court erred in denying her

motion to continue the second trial. On appeal,

> A trial court's decision to deny a
> continuance will only be reversed if an
> abuse of discretion is shown. In
> determining if a continuance should be
> granted, a court should consider: the
> efficient administration of criminal
> justice; the accused's rights, including
> an adequate opportunity to prepare a
> defense; and the rights of other defendants
> awaiting trial who may be prejudiced by
> a continuance.

*United States v. Kikumura,* 947 F.2d 72, 78 (3d Cir. 1991). The

diligence of counsel in requesting the continuance is also a

relevant factor. *United States v. Cruz-Jiminez,* 977 F.2d 95, 104

n. 13 (3d Cir. 1992). Whether the court properly exercised its

discretion depends upon the circumstance present in each

particular case. *People of the Virgin Islands v. Charleswell,*

115 F.3d 171 (3d Cir. 1997).

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 23

We find that the trial court did not abuse its discretion
in denying Thompson's motion to continue the second trial.
Thompson was represented by the same lawyer during the first
trial, which was held on March 18, 2005. (Appellee's Br. at 27.)
The trial judge scheduled jury selection for the second trial
for May 13, 2005. *Id.* On April 21, 2005, the trial court denied
Thompson's motion to continue the second trial date to September
or October due to a heavy work load and potential scheduling
conflicts. *Id.* On May 9, 2005, the defendant moved to reschedule
jury selection from May 13, 2005 to May 16, 2005. *Id.* The court
granted the motion on May 11, 2005, and jury selection began on
May 16, 2005. *Id.*

Having tried the case once before, Thompson's counsel knew
how the Government intended to use their evidence. Thompson's
counsel knew the relative strengths and weaknesses of that
evidence as well as the relative strengths and weaknesses of his
own witnesses. The trial court, in its discretion, scheduled the
second trial so as to balance the scheduling obligations and
heavy workloads of the court, Thompson's counsel, the
prosecutor, and the witnesses and the experts who would need to
travel to attend the trial.

Importantly, Thompson has neither demonstrated prejudice
nor shown that her ability to defend herself was diminished by

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 24

the denial of her request for continuance. *See, e.g., Gov't of
the V. I. v. Charleswell* 115 F.3d 171, 174 (3d Cir. 1997); *see
also Ungar v. Sarafite,* 376 U.S. at 591, 84 S.Ct. at 850 (the
trial judge's discretion is afforded deference where motions to
continue are concerned). The trial court did not abuse its
discretion in scheduling the second trial. Accordingly, we find
the trial court did not err in denying Thompson's motion to
continue the second trial.

**G. Prosecutorial Misconduct**

Thompson argues that she should be afforded a new trial
because, in the Government's opening statement to the jury, the
AAG repeatedly referred to her as a "liar," or a "vicious liar."
Thompson's counsel made a contemporaneous objection to these
statements and sought a mistrial premised on prosecutorial
misconduct. The trial court denied the motion. We find no reason
to disturb the trial court's ruling.

The Third Circuit has articulated a three-part test to
determine whether improper comments are prejudicial: "the scope
of the comments within the context of the entire trial, the
effect of any curative instructions given, and the strength of
the evidence against the defendant." *United States v. Gambone,*
314 F.3d 163, 179 (3d Cir. 2003). "In determining whether a
prosecutor's [statement] denied the defendant a fair trial, 'it

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 25

is important as an initial matter to place the remark in context' of the entire trial." *United States v. Irizarry,* 341 F.3d 273, 306 (3d Cir. 2003)(quoting *Greer v. Miller,* 483 U.S. 756, 766 (1987)). "Even if a prosecutor does make an offending statement, the . . . court can neutralize any prejudicial effect by carefully instructing the jury 'to treat the arguments of counsel as devoid of evidentiary content.'" *United States v. Retos,* 25 F.3d 1220, 1224 (3d Cir. 1994) (quoting *United States v. DiPasquale,* 740 F.2d 1282, 1297 (3d Cir. 1984)).

At issue are the following statements made by the AAG in her opening statement at trial on May 16, 2005:

> Ladies and gentlemen of this jury, those are lies. Pure lies. The defendant concocted different stories after the incident occurred, but that's just one of them that I gave you just now. The evidence will show that this defendant is a murderer, and a vicious, vicious liar. (J. A., vol. I, 51).

and

> [The witness] will tell you that the defendant said to her, that she doesn't know why anybody would want to come and rob them because they don't have anything, That's what the defendant told her. Another lie. (J. A., vol. I, 59).

At the conclusion of the Government's opening statement, Thompson's counsel requested a sidebar conference. After hearing from Thompson's counsel and the AAG, the trial judge noted, "If

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 26

she says one thing one time and the other thing the other that's
the case as they are presented to the jury . . . none of the
stuff they are telling anybody is evidence. So the Court finds
that the motion is denied." (J. A., vol. I, 65-66.) From this
ruling, it is clear that the trial court did not find that the
AAG's comments during opening statements were prejudicial to
Thompson. Thompson did not sufficiently identify any such
prejudice. The record before us demonstrates that during
preliminary jury instructions, the trial judge specifically
instructed the jury that "each side will make an opening
statement. An opening statement is not evidence; it is simply an
outline to help you understand what the parties expect the
evidence to show." (J. A., vol. I, 48.) As the jury was
instructed, an opening statement "is limited in scope to a
general statement of facts which are intended or expected to be
proved. [It] is not designed to be an evidentiary recitation
which minutely describes in detail, rather than generally
outlines or foreshadows, the testimony to be produced." *United
States v. Dorival*, 2008 WL 1884166, at *34 (D.V.I. 2008)
(internal citation omitted).

The record does not reflect any request by Thompson's
counsel for a curative or renewed jury instruction on this
point. Thompson's counsel also fails to offer any evidence that

*Thompson v. People of the V. I.*
D. C. Crim. App. Nos. 2005-100; 2005-101
Memorandum Opinion
Page 27

the jury improperly considered the Government's statements as

evidence. Indeed, the relative scope of the comments is small,

especially considered alongside the trial judge's preliminary

instructions to the jury explaining what constituted evidence

and what did not. Considering the weight of evidence against

Thompson within the context of the entire trial, it is clear

that a mistrial was not warranted. Accordingly, we hold that

there was no prosecutorial misconduct in the Government's

opening statement requiring the trial court to grant a mistrial.

### VI.   CONCLUSION

For the foregoing reasons, the Superior Court's April 6,

2005, Order, and June 24, 2005, Judgment will be affirmed. An

appropriate order follows.